IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

JEFFREY NORTON,
        Plaintiff,

v.                                                         No:  3:07cv296/MCR/MD

MICHAEL J. ASTRUE,
Commissioner of Social Security,
        Defendant.
_____

REPORT AND RECOMMENDATION

        This case has been referred to the undersigned magistrate judge pursuant to the authority of 28 U.S.C. § 636(b) and Rules 72.1(A), 72.2(D) and 72.3 of the local rules of this court relating to review of administrative determinations under the Social Security Act and related statutes.  It is now before the court pursuant to 42 U.S.C. § 405(g) of the Social Security Act for review of a final determination of the Commissioner of Social Security (Commissioner) denying claimant Norton's application for disability insurance benefits and Supplemental Security Income (SSI) benefits under Titles II and XVI of the Act.

        Upon review of the record before this court, it is the opinion of the undersigned that the findings of fact and determinations of the Commissioner are supported by substantial evidence; thus, the decision of the Commissioner should be affirmed.

## PROCEDURAL HISTORY

Plaintiff filed an application for a period of disability and disability insurance benefits and for SSI claiming an onset date of January 9, 2004.  His applications were denied initially and on reconsideration and plaintiff requested a hearing before an Administrative Law Judge (ALJ).  A hearing was held on August 14, 2006 and a supplemental hearing was held on January 9, 2007.  Plaintiff was represented by counsel and testified at both hearings. The ALJ rendered an unfavorable decision on February 7, 2007 (tr. 14-22) and the Appeals Council declined review (tr. 5-11), making the decision of the ALJ the final decision of the Commissioner, and therefore subject to review in this court.  *Falge v. Apfel*, 150 F.3d 1320 (11th Cir. 1998).  This appeal followed.

## FINDINGS OF THE ALJ

Relative to the issues raised in this appeal, the ALJ found that plaintiff had coronary artery disease and degenerative disc disease which were severe but that these impairments did not meet or medically equal one of the impairments listed in Appendix One, Subpart P, Regulations No. 4; that plaintiff's allegations regarding his limitations were not credible; that plaintiff had the residual functional capacity to perform a range of light work and a substantial range of sedentary work; that he was unable to perform his past relevant work; that he was a younger individual with a limited education and that there were a significant number of jobs in the national economy that plaintiff could perform; and that plaintiff was not under a disability as defined in the Act.

## STANDARD OF REVIEW

The ALJ's decision will be reversed only if it is not supported by substantial evidence.  *Falge, supra*.  The court must determine whether the Commissioner's decision is supported by substantial evidence in the record and whether it is premised upon correct legal principles.  *Chester v. Bowen*, 792 F.2d 129, 131 (11th

Cir. 1986). "A determination that is supported by substantial evidence may be meaningless . . . if it is coupled with or derived from faulty legal principles." *Boyd v. Heckler*, 704 F.2d 1207, 1209 (11th Cir. 1983). In determining whether substantial evidence exists, the court must view the record as a whole, taking into account evidence favorable as well as unfavorable to the Commissioner's decision. *Tieniber v. Heckler*, 720 F.2d 1251, 1253 (11th Cir. 1983). "Substantial evidence is more than a scintilla, but less than a preponderance. It is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)(citations omitted). Findings of fact by the Commissioner that are supported by substantial evidence are conclusive. 42 U.S.C. § 405(g); *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996).

A disability is defined as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To qualify as a disability the physical or mental impairment must be so severe that the claimant is not only unable to do his previous work, "but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A).

Pursuant to 20 C.F.R. § 404.1520(a)-(f), the Commissioner analyzes a claim in five steps. A finding of disability or no disability at any step renders further evaluation unnecessary. The steps are:

1. Is the individual currently engaged in substantial gainful activity?

2. Does the individual have any severe impairment?

3. Does the individual have any severe impairments that meet or equal those listed in Appendix 1 of 20 C.F.R. Part 404?

4. **Does the individual have any impairments which prevent past relevant work?**

5. **Do the individual's impairments prevent any other work?**

The claimant bears the burden of establishing a severe impairment that keeps him from performing his past work. If the claimant establishes such an impairment, the burden shifts to the Commissioner at step 5 to show the existence of other jobs in the national economy which, given the claimant's impairments, the claimant can perform. *Chester v. Bowen*, supra, 792 F.2d at 131; *MacGregor v. Bowen*, 786 F.2d 1050, 1052 (11th Cir. 1986). If the Commissioner carries this burden, claimant must prove that he cannot perform the work suggested by the Commissioner. *Hale v. Bowen*, 831 F.2d 1007, 1011 (11th Cir. 1987).

## PLAINTIFF'S MEDICAL HISTORY

As the ALJ found, plaintiff had two severe conditions relevant to this discussion, back pain and coronary artery disease. Plaintiff suffered a work-related back injury in the spring of 1999 and was treated from May 1999 to February 2001 by Ruben Timmons, M.D. X-rays and an MRI taken on May 12, 1999 disclosed an old, mild compression fracture at L1 and a right paracentral extruded disc fragment at L5-S1 (tr. 149-150). Dr. Timmons recommended that plaintiff see a neurosurgeon for a surgical consult. However, the medical evidence on plaintiff's back problems ends on February 22, 2001 with a check up by Dr. Timmons in which the doctor noted that while plaintiff had a herniated disc and needed surgery, there was some delay of approval, presumably by workers compensation. Dr. Timmons indicated that he would maintain the plaintiff on current medication and see him back in four months (tr. 140). There is no further medical record from Dr. Timmons. It must be noted that all of the foregoing took place 4-5 years before plaintiff's claimed onset date, but by the time of his applications he still complained of back pain.

**Plaintiff's other problem had to do with coronary artery disease. On May 16, 2004, which was five months after his claimed onset date, plaintiff suffered from chest pain and underwent coronary bypass surgery at Baptist Hospital in Pensacola. The surgery was done by James Lonquist, M.D., and the attending cardiologist was Thanh Duong-Wagner, M.D. Plaintiff was hospitalized from May 16, 2004 to May 21, 2004 and was discharged, improved (tr. 151-183). He was readmitted the next day because of continued problems and underwent a repeat bypass with catherization by the same physicians. He was released from Baptist Hospital on June 6, 2004 (tr. 184-234).**

**After his surgeries, plaintiff was followed by Dr. Thanh-Wagner. He recovered normally through the end of 2004 (tr. 307, 309, 311, 314, 316) but in early 2005 started having more chest pain and was referred for a stress echocardiogram (tr. 305). He was unable to tolerate treadmill exercise and was therefore given a stress echocardiogram. The impression from the test was (1) mild mitral tricuspid and pulmonic insufficiency, (2) lower limits of normal left ventricular systolic function without any regional wall motion abnormality at rest, and (3) inducible ischemia anteroseptum, septum and posterior walls (tr. 273-274). Based on these studies and Dr. Duong-Wagner's clinical examination, plaintiff underwent a catherization with stent implantation on February 21, 2005 (tr. 249-255). Plaintiff was followed by Dr. Duong-Wagner in April 2005 and June 2005 and was noted to be stable (tr. 299-301). In October 2005 plaintiff complained to Dr. Duong-Wagner of left foot numbness, no angina, but some chest wall pain. In June 2006 he reported to Dr. Duong-Wagner that he had pain in his chest and was sweating profusely, particularly at night (tr. 358).**

**On July 5, 2006, plaintiff underwent nuclear stress testing which revealed overall preserved left ventricular systolic function, moderate size nontransmiural lateral wall infarction and mild apical ischemia which could not be excluded (tr. 360). The same day, an echocardiogram disclosed mild global decrease in the left**

ventricular function and mild elevation of right ventricular systolic pressure (tr. 361). Because plaintiff continued to complain of chest wall pain, a catheterization was done on August 11, 2006. It was read as normal, with open grafts and no obvious ischemic zone to justify ongoing chest pain. Investigation was recommended to determine non-cardiac causes of chest pain (tr. 377-378). Plaintiff last saw Dr. Duong-Wagner on October 24, 2006. He still complained of sweating and lightheadedness, particularly when doing things that required using his arms, such as vacuuming or sweeping. He had no complaints of angina but reported some chest wall pain. Dr. Duong-Wagner's impression was coronary artery disease with previous surgeries; no evidence of ischemia but with chest pain which was non-cardiac related; hypertension; lumbar spine disease; anxiety; heat intolerance; and "unable to work and still awaiting disability." (Tr. 374)

During the period of plaintiff's cardiac difficulties, he was also being treated by Norman Holman, Jr., M.D., Ph.D., an internist. Dr. Holman's clinical records (except for two hand-written pages) are not in the transcript, but he wrote a series of letters in which he expressed his concern over plaintiff's condition. The first, dated October 19, 2004, was written shortly after plaintiff's two bypass surgeries. Dr. Holman noted that he recommended that plaintiff have minimal activity for a period of 8-9 months (tr. 270). Dr. Holman next wrote a letter addressed To Whom It May Concern on March 7, 2005. In that letter, he indicated that plaintiff had been his patient since March 1999 when he suffered from recurrent exacerbations of severe lumbar spine pain secondary to a fall from a 14 foot ladder while working in 1983. Later, in 2004, plaintiff had the two bypass surgeries discussed earlier. Dr. Holman further noted that plaintiff had experienced a prolonged recovery following the open heart surgeries and was limited to lifting no more than 10 pounds for months and was physically deconditioned. In January 2005, plaintiff reported a recurrence of angina and ended up having a stent placement. Finally, Dr. Holman noted that plaintiff had worked as an electrician, a machinist, and a painter, that

these jobs may require heavy lifting, climbing, working overhead, and other strenuous tasks, and that in his opinion, plaintiff was unemployable because of his lack of ability to perform the tasks inherent in the various jobs for which he was trained (tr. 268-269).

On August 2, 2005 Dr. Holman wrote another letter which he described as an update to his letter of March 2005. In the second letter, he noted that plaintiff was involved in an automobile accident in January 2004 in which he suffered a cervical neck injury and was now having increasing problems with chronic neck pain. Dr. Holman indicated that it was now his belief that plaintiff would have difficulties even at a lighter desk job due to the distraction of his pain and that he should be considered for total disability (tr. 267). Dr. Holman further opined that plaintiff could sit for eight hours in an eight hour day, could sit for one hour at any one time, could stand or walk for four hours in an eight hour day and could stand or walk for 30 minutes at any time; that he was not required to lie down during the day; that he could lift 20 pounds occasionally and up to 10 pounds frequently, and that he had limitations in using his feet because of left foot numbness, all of which was secondary to plaintiff's angina with moderate to heavy exertion and chronic low back pain (tr. 347-350). In a clinical assessment of pain, Dr. Holman opined that plaintiff's pain was significant to the point that he would be distracted from adequate performance of daily activities of work and to such a degree as to cause an abandonment of task and that his drug side effects would be expected to limit his effectiveness (tr. 351-352).

On August 1, 2006, Dr. Holman wrote a letter to plaintiff's counsel indicating that plaintiff had cervical pain secondary to a motor vehicle accident in January 2004 which had remained constant; that he had lumbar pain secondary to a fall from a ladder in 1983 which had worsened with time; and that he had angina status post open heart surgery which would probably be the cause of plaintiff's heat intolerance

and severe sweats, and that these symptoms had not changed and were not expected to improve (tr. 355).

Dr. Holman's actual clinical records in the administrative file comprise two pages, dated March 17, 2006 (tr. 353), and June 15, 2006 (tr. 356).[1]  Both indicate that plaintiff complained of neck and back pain, but there are no accompanying reports of physical examination for such things as strength, range of motion, reflexes, swelling, spasm or similar documentable signs.

Plaintiff was also examined by two physicians at the request of the state agency.  The first, Douglas Bond, D.O., examined plaintiff on June 7, 2005.  He noted chief complaints of heart disease and low back pain.  Physical examination findings were relevant for decreased flexion and extension in the neck and low back.  Plaintiff's grip strength was slightly reduced, his deep tendon reflexes were normal, straight leg raising was mildly positive and hip flexion was very painful.  He exhibited increased pain with heel walk compared to toe walk and favored his left hip on tandem walk.  Dr. Bond's assessment was degenerative disc disease at L5-S1, an old L1 compression fracture, and atherosclerotic coronary artery disease, severe, status post 3-vessel bypass graft and stenting procedures (tr. 264-265).

On October 16, 2006, plaintiff was also seen by Leo Chen, M.D., an orthopedic surgeon.  Physical examination revealed some limitation of range of motion in the neck and low back but otherwise extremities had full passive range of motion with no signs of joint swelling, inflammation or redness.  There was decreased subjective sensation in the left foot and slight weakness in the left ankle.  Deep tendon reflexes were normal as was grip strength.  Dr. Chen's assessment was chronic low back pain and early lumbar spondylosis.  He further opined that plaintiff would have no mental or environmental work-related restrictions but would have some physical

---

[1]  There are other pages from Dr. Holman's records, but they consist entirely of reports of various laboratory and hospital tests, all relating to plaintiff's heart problems (tr. 271-81).

limitations in flexion, extension and rotation of his neck and low back (tr. 364-372).

## DISCUSSION

The plaintiff argues that the ALJ erred in failing to give appropriate weight to the opinion of Dr. Holman and in failing to ask Dr. Holman for additional information, and that he erred in not properly applying the standard for evaluating plaintiff's subjective complaints of pain. Plaintiff also contends that the Appeals Council erred in failing to remand the case in the light of new evidence. Plaintiff argues that he was disabled from his onset date as a matter of law. The Commissioner argues that the ALJ's findings were supported by substantial evidence and must, therefore, be sustained. The issue thus presented is whether the ALJ's decision that the plaintiff was not disabled, in light of his physical condition, age, education, work experience, and residual functional capacity, is supported by substantial evidence in the record.

1. <u>Dr. Holman.</u>

Plaintiff first contends that the ALJ erred in not accepting Dr. Holman's opinion that he was disabled, and in not seeking additional documentation from Dr. Holman. Absent good cause, the opinion of a claimant's treating physician must be accorded considerable or substantial weight by the Commissioner. *Phillips v. Barnhart*, 357 F.3d 1232, 1240-1241 (11th Cir. 2004); *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997); *Broughton v. Heckler*, 776 F.2d 960, 960-961 (11th Cir. 1985); *Jones v. Bowen*, 810 F.2d 1001, 1005 (11th Cir. 1986). "Good cause" exists when: (1) the treating physician's opinion was not bolstered by the evidence; (2) the evidence supported a contrary finding; or (3) the treating physician's opinion was conclusory or inconsistent with the doctor's own medical records. *Phillips,* 357 F.3d at 1241; see also *Lewis*, 125 F.3d at 1440 (citing cases).

If a treating physician's opinion on the nature and severity of a claimant's impairments is well-supported by medically acceptable clinical and laboratory diagnostic techniques, and is not inconsistent with other substantial evidence in the

record, the ALJ must give it controlling weight. 20 C.F.R. § 404.1527(d)(2). Where a treating physician has merely made conclusory statements, the ALJ may afford them such weight as is supported by clinical or laboratory findings and other consistent evidence of a claimant's impairments. See *Wheeler v. Heckler*, 784 F.2d 1073, 1075 (11th Cir. 1986); *see also Schnor v. Bowen,* 816 F.2d 578, 582 (11th Cir. 1987). When a treating physician's opinion does not warrant *controlling* weight, the ALJ must nevertheless weigh the medical opinion based on 1) the length of the treatment relationship and the frequency of examination; 2) the nature and extent of the treatment relationship; 3) medical evidence supporting the opinion; consistency with the record as a whole; 5) specialization in the medical issues at issue; and 6) other factors which tend to support or contradict the opinion. 20 C.F.R. 404.1527(d).

A brief and conclusory statement that is not supported by medical findings, even if made by a treating physician, is not persuasive evidence of disability. *Johns v. Bowen*, 821 F.2d 551, 555 (11th Cir. 1987); *Warncke v. Harris*, 619 F.2d 412, 417 (5th Cir. 1980). "When electing to disregard the opinion of a treating physician, the ALJ must clearly articulate its reasons." *Phillips*, 352 F.3d at 1241. Failure to do so is reversible error. *Lewis*, 125 F.3d at 1440 (citing *MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986));[2] *see also Nyberg v. Commissioner of Social Security*, 179 Fed.Appx. 589, 591 (11th Cir. 2006) (Table, text in WESTLAW)(also citing *MacGregor*).

Here plaintiff argues that the ALJ did not show good cause for discounting Dr. Holman's opinions, and that the letters Dr. Holman wrote, together with the records of Dr. Duong-Wagner, directed a finding of disabled. He further argues that the ALJ in effect put words in plaintiff's mouth at the hearing by getting him to agree that if he indeed continued to have coronary problems, his doctor would re-hospitalize him

---

[2] *MacGregor* further held that "Where the [Commissioner] has ignored or failed properly to refute a treating physician's testimony, we hold as a matter of law that he has accepted it as true." 786 F.2d at 1053.

*Case No: 3:07cv296/MCR/MD*

(tr. 401-402). Plaintiff says that the ALJ had made up his mind that plaintiff was not disabled, and effectively forced plaintiff to agree with him.

As to showing good cause, the ALJ correctly noted that Dr. Chen's recommended restrictions were slightly more limiting that those of Dr. Holman (tr. 17). He further noted that plaintiff's daily activities after his heart surgeries included bicycle riding and yard work, and that his back problems long pre-existed his onset date without any evidence of the condition worsening (tr. 19). The only thing new was neck pain, which the ALJ took into consideration. The ALJ did not accept Dr. Holman's opinions on pain, as discussed in more detail in the next section, because those opinions were contrary to Dr. Holman's own recommended restrictions. The ALJ sufficiently discounted Dr. Holman's opinions based on substantial record evidence. As to plaintiff's argument that the ALJ should have developed the record to sustain his finding that plaintiff could work, the court is at a loss. Plaintiff does not explain what this means, nor does he suggest what further development of the record would have been appropriate other than heeding plaintiff's plea to accept Dr. Holman's opinion. Plaintiff has not shown error on this issue and is not entitled to reversal.

      2.     <u>Plaintiff's subjective complaints of pain.</u>

Plaintiff next argues that the ALJ erred in failing properly to apply the appropriate standard in evaluating his subjective complaints of pain. As this court is well aware, pain is treated by the Regulations as a symptom of disability. Title 20 C.F.R. § 404.1529 provides in part that the Commissioner will not find disability based on symptoms, including pain alone, ". . . unless medical signs or findings show that there is a medical condition that could be reasonably expected to produce these symptoms." *Accord* 20 C.F.R. § 416.929. The Eleventh Circuit has articulated the three-part pain standard, sometimes referred to as the *Hand*[3] test, as follows:

---

[3] *Hand v. Bowen*, 793 F.2d 275, 276 (11th Cir.1986) (the case originally adopting the three-part pain standard).

*Case No: 3:07cv296/MCR/MD*

> **In order to establish a disability based on testimony of pain and other symptoms, the claimant must satisfy two parts of a three-part test showing: (1) evidence of an underlying medical condition; and (2) either (a) objective medical evidence confirming the severity of the alleged pain; or (b) that the objectively determined medical condition can reasonably be expected to give rise to the claimed pain.**

*Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002) (citing *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991); *Ogranaja v. Commissioner of Social Security*, 186 Fed.Appx. 848, 2006 WL 1526062, *3+ (11th Cir. 2006) (quoting *Wilson*) (Table, text in WESTLAW); *Elam v. Railroad Retirement Bd.*, 921 F.2d 1210, 1216 (11th Cir. 1991).

The Eleventh Circuit has also approved an ALJ's reference to and application of the standard set out in 20 C.F.R. § 404.1529, because that regulation "contains the same language regarding the subjective pain testimony that this court interpreted when initially establishing its three-part standard." *Wilson, supra*, 284 F.3d at 1226. Thus, failure to cite to an Eleventh Circuit standard is not reversible error so long as the ALJ applies the appropriate regulation.

But "[w]hile both the Regulations and the *Hand* standard require objective medical evidence of a condition that could reasonably be expected to cause the pain alleged, neither requires objective proof of the pain itself." *Elam*, 921 F.2d at 1215. The Eleventh Circuit has held that "pain alone can be disabling, even when its existence is unsupported by objective evidence." *Foote v. Chater*, 67 F.3d 1553, 1561 (11th Cir. 1995)(citing *Marbury v. Sullivan*, 957 F.2d 837, 839 (11th Cir. 1992)); *Walker v. Bowen*, 826 F.2d 996, 1003 (11th Cir. 1987); *Hurley v. Barnhart*, 385 F.Supp.2d 1245, 1259 (M.D.Fla. 2005). However, the presence or absence of evidence to support symptoms of the severity claimed is a factor that can be considered. *Marbury,* 957 at 839-840; *Tieniber v. Heckler,* 720 F.2d 1251, 1253 (11th Cir. 1983).

**Finally, if the Commissioner refuses to credit subjective testimony of the plaintiff concerning pain he must do so explicitly and give reasons for that decision.** *MacGregor v. Bowen*, 786 F.2d at 1054.  **Where he fails to do so, the Eleventh Circuit has stated that it would hold as a matter of law that the testimony is accepted as true.** *Holt v. Sullivan*, 921 F.2d at 1223; *MacGregor v. Bowen*, 786 F.2d at 1054. **Although the Eleventh Circuit does not require an explicit finding as to a claimant's credibility, the implication must be obvious to the reviewing court.** *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005).  **The credibility determination does not need to cite particular phrases or formulations but it cannot merely be a broad rejection which is not enough to enable the reviewing court to conclude that the ALJ considered the claimant's medical condition as a whole.** *Dyer*, 395 F.3d at 1210 (11th Cir. 2005) (internal quotations and citations omitted).  **And of course, the reasons articulated for disregarding the plaintiff's subjective pain testimony must be based upon substantial evidence.** *Wilson*, 284 F.3d at 1225-1226; *Jones v. Department of Health and Human Services*, 941 F.2d 1529, 1532 (11th Cir. 1991); *Hurley*, 385 F.Supp.2d at 1259.

**Underlying the *Hand* standard is the need for a credibility determination concerning a plaintiff's complaints of pain.  Those complaints are, after all, subjective.  "[T]he ascertainment of the existence of an actual disability depend[s] on determining the truth and reliability of [a claimant's] complaints of subjective pain."** *Scharlow v. Schweiker*, 655 F.2d 645, 649 (5th Cir. 1981) (holding that the ALJ must resolve "the crucial subsidiary fact of the truthfulness of subjective symptoms and complaints").[4]  **People with objectively identical conditions can experience significantly different levels of pain, and pain is more readily treated in some than in others.  "Reasonable minds may differ as to whether objective medical**

---

[4] **Decisions of the United States Court of Appeals for the Fifth Circuit decided prior to September 30, 1981 are binding precedent in the Eleventh Circuit.** *Bonner v. Pritchard*, 661 F.2d 1206, 1207 (11th Cir.1981) (en banc).

*Case No: 3:07cv296/MCR/MD*

impairments could reasonably be expected to produce [the claimed] pain. This determination is a question of fact which, like all factual findings by the [Commissioner], is subject only to limited review in the courts . . . ." *Hand, supra,* at 1548-49. It is within the ALJ's "realm of judging" to determine whether "the quantum of pain [a claimant] allege[s] [is] credible when considered in the light of other evidence." *Arnold v. Heckler*, 732 F.2d 881, 884 (11th Cir. 1984). Thus, a physician may be told by a patient that he or she is in pain, and the physician may believe it, but the ALJ is not bound by that. The evidence as a whole, including the existence of corroborating objective proof or the lack thereof, and not just a physician's belief or the plaintiff's claims, is the basis for the ALJ's credibility determination.

Plaintiff here faults the ALJ for improperly discounting his complaints of pain, particularly in light of Dr. Holman's opinion. He says that the ALJ relied solely on plaintiff's daily activities, which included doing some yard work and riding a bicycle. That was not the sole basis for the ALJ's decision, however. He noted that the *physical* capacities given by Dr. Holman and Dr. Chen were not substantially different, which makes Dr. Holman's *pain* assessment less convincing. The plaintiff did in fact ride his bicycle and work in the yard, but the documented limiting factor on his ability to do so was his heat intolerance (tr. 297, 301, 303, 358), which the ALJ included as a limitation (tr. 18). Physical findings concerning plaintiff's neck and back problems were completely absent, and the ALJ noted that the records disclosed only sporadic subjective complaints of pain (tr. 19). Also, the ALJ correctly noted that there was nothing in the record to support a claim of medication side effects (tr. 20). The ALJ had the benefit of reviewing the entire medical record, and his finding that plaintiff had the residual functional capacity to work at the sedentary level with limitations was supported by substantial record evidence. Plaintiff is not entitled to reversal on this ground.

3.   <u>New evidence.</u>

Plaintiff's last claim for reversal is based on new evidence presented to the Appeals Council. The new evidence consisted of a letter from Dr. Holman dated February 26, 2007, in which he disagreed with the ALJ's decision and re-stated his previous opinions. When the Appeals Council denies review, the decision of the ALJ becomes the final decision of the Secretary. 20 C.F.R. § 404.955." *Keeton v. Department of Health and Human Services*, 21 F.3d 1064, 1066 (11th Cir. 1994). "[N]ew evidence first submitted to the Appeals Council is part of the administrative record that goes to the district court for review when the Appeals Council accepts the case for review as well as when the Council denies review." 21 F.3d at 1067. "To review the Appeals Council's denial of review, courts will have to look at the pertinent evidence to determine if the evidence is new and material, the kind of evidence the Appeals Counsel must consider in making its decision whether to review an ALJ's decision. *See* 20 C.F.R. S 404.970(b) ( "Appeals Council *shall* evaluate the entire record including the new and material evidence submitted to it if it relates to the period on or before the date of the administrative law judge hearing decision.")." *Falge v. Apfel*, 150 F.3d 1320, 1324 (11th Cir. 1998). That does not mean, however, that a reviewing court can consider the new evidence in determining whether the Commissioner's decision was supported by substantial record evidence. For that purpose, the court may look only to the evidence that was before the ALJ at the time he made his decision. *Id*.

A remand for consideration of new evidence pursuant to sentence six of 42 U.S.C. § 405(g)[5] is warranted *if* the claimant shows "that (1) new, noncumulative evidence exists, (2) the evidence is material such that a reasonable possibility exists that the new evidence would change the administrative result, and (3) good cause

---

[5] Remand may occur pursuant to either sentence four or sentence six of 42 U.S.C. § 405(g). *Melkonyan v. Sullivan*, 501 U.S. 89, 111 S.Ct. 2157, 115 L.Ed.2d 78 (1991). A sentence six remand can occur on the motion of the Secretary before she files her answer for good cause, or, alternatively, upon a showing that there is new material evidence and good cause for the failure to incorporate such evidence into the record.

exists for the applicant's failure to submit the evidence at the appropriate administrative level." *Falge*, 150 F.3d at 1323; *Keeton*, 21 F.3d at 1067; *Caulder v. Bowen*, 791 F.2d 872, 877 (11th Cir. 1986), citing *Cherry v. Heckler*, 760 F.2d 1186 (11th Cir. 1985).[6] To be material, the new evidence must relate back to the original alleged onset date of disability, or at least must relate to the disabilities litigated administratively. *Cannon v. Bowen*, 858 F.2d 1541, 1546 (11th Cir. 1988).[7] Good cause may be shown, for example, where the evidence did not exist at the time of the administrative decision. *Cherry v. Heckler*, 760 F.2d at 1192. Therefore, if the court finds that the evidence was noncumulative and material and that good cause has been shown, remand to the Commissioner under sentence six of 42 U.S.C. § 405(g) is appropriate.

Here, the new letter from Dr. Holman was not new evidence. It was cumulative and presented no essential new facts, only a recitation and explanation of Dr. Holman's earlier opinion. The letter was not material, and there was no good cause for not presenting it earlier. The letter was simply a disagreement with the ALJ's decision, and was not evidence in the legal sense at all. The Appeals Council considered the letter and found that it did not provide a basis for changing the ALJ's decision. There was no error by the Appeals Council, and plaintiff is not entitled to reversal on this ground.

---

[6] The Supreme Court has noted a conflict among the circuits as to the judicial standard of review as to this issue. *Sullivan v. Finkelstein*, 496 U.S. 617, 110 S.Ct. 2658, 2664 n. 6, 110 L.Ed.2d 563 (1990). This court must follow the standard set by *Caulder*, 791 F.2d at 875, which reiterated the ruling in *Cherry* that the court determines the materiality of new evidence for purposes of remand in a *de novo* proceeding as a matter of law.

[7] Stated another way, the new evidence must be relevant to a condition existing on or before the ALJ's decision, *Thomas v. Sullivan*, 928 F.2d 255, 260-261 (8th Cir. 1991), or at least before the final decision of the Appeals Council. *See Smith v. Bowen*, 792 F.2d 1547, 1551 (11th Cir. 1986) (Appeals Council may consider new evidence.).

Accordingly, it is respectfully RECOMMENDED that the decision of the Commissioner be AFFIRMED, that this action be DISMISSED and that the clerk be directed to close the file.

At Pensacola, Florida this 29th day of July, 2008.

/s/ *Miles Davis*
MILES DAVIS
UNITED STATES MAGISTRATE JUDGE

### NOTICE TO THE PARTIES

**Any objections to these proposed findings and recommendations must be filed within ten days after being served a copy hereof.  <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.</u>  A copy of any objections shall be served upon any other parties.  Failure to object may limit the scope of appellate review of factual findings.  See 28 U.S.C. § 636;** *United States v. Roberts***, 858 F.2d 698, 701 (11th Cir. 1988).**